642 So.2d 542 (1994)
Michael Gene ABSHIRE, Appellant,
v.
STATE of Florida, Appellee.
No. 81326.
Supreme Court of Florida.
June 30, 1994.
Rehearing Denied September 21, 1994.
David S. Morgan, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Margene A. Roper, Asst. Atty. Gen., Daytona Beach, for appellee.
SHAW, Justice.
Abshire appeals his conviction of first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We reverse the conviction and vacate the sentence of death.
In June of 1991, Michael G. Abshire, Christopher Marquard, and Stacey Ann Willetts were traveling together from North Carolina to Florida. On November 11, 1991, hunters found Willetts' remains in a wooded area. Abshire and Marquard were found guilty of first-degree murder and armed robbery in connection with her demise.[1] The jury recommended Abshire's death by a vote of eleven to one and the trial judge imposed the death penalty.[2] Abshire, raising eighteen issues,[3] asks this Court to reverse the *543 conviction and vacate the sentence of death. We address issue two, which challenges the discriminatory use of gender-based peremptory challenges under the Equal Protection Clause of the United States Constitution. We find this issue dispositive and dismiss the remaining issues as moot.
During voir dire Mr. Whitson, the assistant state attorney, appeared to be using peremptory challenges to exclude women from the jury solely on the basis of their gender.[4] Defense counsel's objection to this behavior resulted in the following colloquy:
Mr. McLeod [defense counsel]: I want to interpose an objection, challenge the peremptories. Given the statement made last time about women, given the systematic exclusion, back strike on women this time, I want to challenge the State to indicate why, on each and every one of the women that they have challenged on a peremptory basis, perhaps to Slappy which I understand and Neil deals with blacks and not women.
... .
Mr. McLeod: And I want to make the objection based upon the fact that women, constitutionally, like racial groups and like minorities, are protected areas, and why they are being systematically excluded from this jury.
The Court: Why are they being excluded?
Mr. Whitson: They are not being systematically excluded. We have five women on the jury.
The Court: Well, based upon the rules that I understand are laid down by Slappy, the fact that you have blacks on the jury does not excuse you from systematically excusing other blacks and I don't think there is any question in this case but you're systematically excluding women. You even made that statement that you couldn't get  if you could get anything but police officers and women on this jury, you wouldn't have any problem.
Tell me why you are systematically excluding women.
Mr. Whitson: It's my impression, Judge, from the people that I've asked to have stricken, they tend to be more, more emotional than the other people on the jury that I have not stricken from my view of their answers. Their answers to some of the tougher questions were more equivocal than the remaining people that we've asked to have stay on the jury.
... .
The Court: That's not sufficient, but Slappy doesn't apply to women... .
Id. at 923-25.
While this case was pending on direct appeal, the United States Supreme Court released an opinion which addressed the issue of gender-based peremptory challenges. We find the following language from that opinion dispositive:
[The] Equal Protection Clause prohibits discrimination in jury selection on the basis of gender, or on the assumption that an individual will be biased in a particular case for no reason other than the fact that the person happens to be a woman or happens to be a man. As with race, the "core guarantee of equal protection, ensuring citizens that their State will not discriminate ..., would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' [gender]."
J.E.B. v. Alabama ex rel. T.B., ___ U.S. ___, ___, 114 S.Ct. 1419, 1430, 128 L.Ed.2d 89 (1994) (quoting Batson v. Kentucky, 476 U.S. 79, 97-98, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 *544 (1986)).[5]
It has been a decade since we first held that race-based peremptory challenges violate the defendant's right to an impartial jury under article I, section 16 of our state constitution. State v. Neil, 457 So.2d 481, 486 (Fla. 1984). More recently, we held that:
[U]nder the tenets of the Equal Protection Clause of the Florida Constitution, jurors should not be rejected solely on the basis of their skin color or their ethnicity. Art. I, § 2, Fla. Const. To satisfy the state's constitutional guarantee of an impartial jury, citizens who are otherwise qualified to serve as impartial jurors cannot be peremptorily challenged based on their membership in a particular ethnic group. Art. I, § 16, Fla. Const.
State v. Alen, 616 So.2d 452, 454 (Fla. 1993) (footnote omitted). Today we hold that the Equal Protection Clause of our federal constitution prohibits gender-based peremptory challenges.
Jury service is a privilege accorded all citizens who meet certain qualifications and the right to an impartial jury is granted to every defendant who is entitled to a trial by jury. To extend or restrict this privilege solely on the basis of gender is to foster the sex-based stereotypes that have long impeded the progress of women in our judicial system. We join the Supreme Court of the United States in rejecting the common law's erroneous belief that women should not serve as jurors because of "propter defectum sexus," the defect of sex. J.E.B., ___ U.S. at ___, 114 S.Ct. at 1423; United States v. DeGross, 960 F.2d 1433, 1438 (9th Cir.1992). Accordingly, as dictated by J.E.B. v. Alabama ex rel. T.B., ___ U.S. ___, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), we find that the Equal Protection Clause of the federal constitution prohibits gender-based peremptory challenges. In so holding, we extend the procedural safeguards set forth in State v. Johans, 613 So.2d 1319 (Fla. 1993), to gender-based peremptory challenges.[6]
We find that in the instant case, the comments made by the assistant state attorney showed a desire to exclude women from the jury solely because they were women. These comments violated the prospective jurors' and the defendant's right to equal protection.[7] The fact that several women were seated as jurors is of no moment, for as we have previously said "number alone is not dispositive, nor even the fact that a member of the minority in question has been seated as a juror or alternate." State v. Slappy, 522 So.2d 18, 21 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988); see also Johans, 613 So.2d at 1321 ("A [gender-neutral] justification for a peremptory challenge cannot be inferred merely from *545 circumstances such as the composition of the venire or the jurors ultimately seated.").
We reverse Abshire's convictions for first-degree murder and armed robbery, vacate his sentence of death, and remand for a new trial.
It is so ordered.
GRIMES, C.J., OVERTON, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] Marquard was tried separately.
[2] The judge found the aggravating factors of a capital felony committed by a person under sentence of imprisonment; previous conviction of a felony involving the use or threat of use of violence; a crime committed while engaged in the commission of robbery or committed for financial gain; heinous, atrocious or cruel; and cold, calculated and premeditated. The judge found that Marquard's domination over Abshire was "some evidence" of a statutory mitigating factor. Non-statutory mitigating factors were Abshire's testimony in Marquard's trial, his cooperation with law enforcement, and his suffering from a lack of emotional support during childhood.
[3] Appellant's claims are: (1) discriminatory exclusion of women from the venire violated Abshire's right to an impartial jury; (2) gender-based peremptory strikes against women violated the Equal Protection Clause and fair cross section requirements of the United States Constitution; (3) improper prosecutorial comments on the client/lawyer relationship; (4) improper prosecutorial comments on the defendant's right to silence; (5) improper questioning of the medical examiner; (6) improper inquiry into defendant's lack of remorse; (7) defense counsel's inquiry of a material issue was improperly restricted; (8) improper prosecutorial closing argument; (9) improper principal instruction was given; (10) the prosecutor's conduct deprived the defendant of a fair trial; (11) section 921.141 Florida Statutes (1991) should have been held unconstitutional; (12) trial judge erred in instructing the jury that parole is equivalent to imprisonment or community control; (13) trial court erred in allowing prosecutor to inquire into the specifics of a previous felony; (14) robbery or pecuniary gain aggravating factor was improperly found; (15) robbery and pecuniary gain aggravating factors were improperly found; (16) crime was not heinous, atrocious or cruel; (17) crime was not cold, calculated and premeditated; and (18) the death penalty is disproportional punishment.
[4] During voir dire, the assistant state attorney made the following statements when examining a prospective juror, a former policeman:

Mr. Whitson: Judge, if we can get something besides women and former police officers, we'll get us a panel.
... .
... I don't think you have a chance sitting on this jury, just between us girls, if that will help you any.
Record On Appeal Vol. V at 875, 886, Abshire v. State, No. 91-2418 (Fla. 7th Cir.Ct. Feb. 5, 1993).
[5] The section reads:

Section 1. All persons born or naturalized in the United State and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
U.S. Const. amend. XIV, § 1.
[6] Johans provides that:

[A] Neil inquiry is required when an objection is raised that a peremptory challenge is being used in a racially discriminatory manner... .
... .
It requires only a minute or two for a party to indicate valid, nondiscriminatory reasons for excluding a potential juror. Once articulated, the trial court is in the best position to evaluate the neutrality of the proffered reasons, and its conclusion in this regard will be accorded deference on appeal. However, where no inquiry is conducted, "[d]eference cannot be shown to a conclusion that was never made."
... .
... Furthermore, a peremptory strike will be deemed valid unless an objection is made that the challenge is being used in a racially discriminatory manner. However, upon such objection, the trial judge must conduct a Neil inquiry. See Blackshear v. State, 521 So.2d 1083, 1084 (Fla. 1988). As we noted in Blackshear, a hearing conducted well after the trial is untimely. Id.
613 So.2d at 1321-22 (quoting Hall v. Daee, 602 So.2d 512, 516 (Fla. 1992)).
[7] Potential jurors, as well as litigants have an equal protection right to nondiscriminatory jury selection procedures. J.E.B., ___ U.S. at ___-___ n. 12, 114 S.Ct. at 1427-28 n. 12.