LEVINE, J.
The issue presented for our review is whether the trial court erred in allowing a peremptory strike of an African-American juror by the state, where the state accepted two white jurors who were similarly situated to the African-American juror. We find that the trial court erred in finding the state’s race-neutral reason for striking that African-American juror to be genuine, and as a result, we reverse appellant’s convictions and remand for a new trial.
Appellant was charged with one count of trespass of a structure with a firearm and one count of improper exhibition of a firearm, after appellant entered the Broward County Courthouse through the exit door with a firearm.
At trial, during jury selection, prospective juror 2, who was white, stated that her brother had been arrested in the past for illegal drugs. Juror 2’s father had also been arrested, but juror 2 did not know what her father’s arrest was for. Juror 2 indicated that neither of these incidents would affect her ability to be a fair and impartial juror.
Prospective juror 9, who was white, also stated that her stepbrother had been arrested for drugs. Juror 9 stated that her stepbrother’s arrest would not affect her ability to be fair and impartial.
Prospective jurors 5 and 15 were African-American. Neither juror 5 nor juror 15 had close family members who had been arrested.
Prospective juror 22 was also African-American. Juror 22 described himself as “[qjuiet.” Juror 22 had two brothers and a sister who had been arrested. One of juror 22’s brothers was arrested for a “[djrug charge.” Juror 22 did not know what his other brother and his sister had been arrested for. Despite these arrests of his family members, juror 22 confirmed that he could be a fair and impartial juror.
Early on in the selection process, jurors 2 and 5 were on the proposed jury. After the state exercised a peremptory challenge, juror 9 entered the proposed jury. After several more strikes were exercised, juror 15 entered the panel. The state accepted a panel containing these four jurors. More strikes were then exercised, and juror 22 entered the proposed panel. The following ensued:
[State]: State would strike number 22....
THE COURT: That’s the State’s last peremptory.
[Appellant]: Judge, I’m going to ask for a race neutral reason on [juror 22].
THE COURT: Let the record reflect that [juror 22] is a black male. State.
[State]: Yes, Your Honor. [Juror 22] has stated that several of his family members have been arrested for drug charges, various charges in Broward County.
[Appellant]: I will point out to the Court and for the record that [juror 2] has relatives who has [sic] been arrested. [Juror 9] has a stepbrother that has been arrested for drugs.
THE COURT: I’m sorry, one more time. [Juror 2],
[Appellant]: [Juror 2] told us she had a brother and a father, I think, who were arrested. And [juror 9] told us her stepbrother was arrested for drugs. And both of those are, apparently, acceptable to [the prosecutor]. I would also point out that he struck [juror 4], who is a black person, the way I view him. And I am going to ask the Court to find it’s not a genuine reason. Race neutral reason.
THE COURT: State, response.
*1277 [State]: That’s the only reason I have, Your Honor. That’s what he stated, that he has family members who have been arrested. Otherwise, he has been very quiet. None of us got much out of him. The State would point out that we accepted number 15 ... who is also an African-American male.
[Appellant]: I will also point out that the State accepted ... well, the bottom line is they accepted so far two people who told us the exact same thing that [the prosecutor] uses as a reason to justify what I consider to be a racially motivated strike.
The court and appellant then discussed whether the “quantities” of the arrests mattered, and the court stated, “No,, but there are other things involved here.” The court and appellant also agreed that juror 2 did not know what “the other arrests were for.” The colloquy continued:
THE COURT: It sounds like both of those you can ... In any event ... I mean, the question here is certainly [juror 22] is a member of a racial group. And the State has come forward with a race neutral explanation. So then the question here is does the Court believe that given all the circumstances surrounding the strike that the explanation is not a pretext.
[Appellant]: Let me add one thing for the record. Both [juror 2] and [juror 9] are white.
THE COURT: All right. For the record, you are not disputing that [juror 15] is also on the jury is black, correct?
[Appellant]: Correct. He didn’t say anything about an arrest I have. Maybe I’m wrong. If he did, I would point it out as well.
THE COURT: He has struck others that are not black.
[Appellant]: That’s true. Aren’t that many blacks on the panel.
THE COURT: Juror number five ... is also a black female.
[Appellant]: Yes, she is.
THE COURT: And so, I mean [juror 2] has already been a juror on a criminal case before.
[[Image here]]
[Appellant]: Right. How does that go to the genuineness of the explanation? THE COURT: Well, no. What the Court has to determine is based on all the circumstances surrounding the strike whether the explanation is not a pretext.
[[Image here]]
[Appellant]: I’m saying the most telling evidence that it’s not genuine is the fact that he accepted the two white jurors who told us that they had family members arrested, which he [sic] is the reason he is using to accuse ... excuse, rather, [juror 22], get rid of [juror 22], who is black and told us he had family members arrested.
THE COURT: But surrounding all the circumstances, and all the circumstances also establish he has ... some of his other peremptories were on individuals who were not black.
[Appellant]: That’s true.
THE COURT: Yet he did not exercise peremptories on two individuals who are black.
[Appellant]: That’s true too.
THE COURT: So, again, given all the circumstances, the question is ... I think the explanation is facially race neutral. I don’t see that that’s an issue at all. The question is is it a pretext.
[[Image here]]
THE COURT: Here you’re talking about an individual who has two brothers and a sister, all who have been arrested. And so he has ... the State has *1278 not exercised peremptories on two other black jurors and has exercised peremp-tories on several non-black jurors. So given all the circumstances surrounding the strike, I am going to find the explanation is not pretext. So I am going to go ahead and sustain the strike.
Before the jury was sworn, appellant renewed his objection to the strike of juror 22. Jurors 2, 5, 9, and 15 served on the jury. Appellant was subsequently convicted of armed trespass of a structure and improper exhibition of a dangerous weapon, for his conduct in entering the courthouse through the exit door with a firearm.
We review a trial court’s ruling in allowing the peremptory strike of a juror, where the strike has been alleged to have been exercised in a discriminatory manner, under a “clearly erroneous” standard. Cobb v. State, 825 So.2d 1080, 1086 (Fla. 4th DCA 2002). “The proper test under Melbourne requires the trial court’s decision on the ultimate issue of pretext to turn on a judicial assessment of the credibility of the proffered reasons and the attorney or party proffering them.... ” Hayes v. State, 94 So.3d 452, 462 (Fla.2012). “[Peremptory challenges are presumed to be exercised in a nondiscriminatory manner.” Cook v. State, 104 So.3d 1187, 1189 (Fla. 4th DCA 2012) (citation omitted).
In Melbourne v. State, 679 So.2d 759 (Fla.1996), the Florida Supreme Court set forth a three step procedure to be followed where a party objects to the assertion of a peremptory challenge on the grounds that the peremptory challenge is made on a discriminatory basis:
A party objecting to the other side’s use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.
At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court’s focus in step 3 is not on the reasonableness of the explanation but rather its genuineness. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination.
Id. at 764 (footnotes omitted). In determining whether the proffered reason for the strike is genuine under step 3, relevant circumstances for the trial court to consider include “the racial make-up of the veni-re; prior strikes exercised against the same racial group; a strike based on a reason equally applicable to an unchallenged juror; or singling the juror out for special treatment.” Wimberly v. State, 118 So.3d 816 (Fla. 4th DCA May 23, 2012) (citation omitted). When performing step 3, a trial court need not “recite a perfect script or incant specific words,” however, the trial court must “weigh[ ] the genuineness of a reason just as it would any other disputed fact.” Hayes, 94 So.3d at 463 (citation omitted).
“Florida courts have repeatedly held that it is racially discriminatory to exercise a peremptory challenge against a prospective juror in the minority where the proffered reason applies equally to a prospec *1279 tive juror in the majority.” Smith v. State, 799 So.2d 421, 424 (Fla. 5th DCA 2001).
For example, in Nowell v. State, 998 So.2d 597 (Fla.2008), the state sought to strike a Hispanic juror, in part because the juror was young and appeared to be of a similar age to the defendant. The supreme court found that age could be a legitimate race-neutral reason for a peremptory challenge, but nevertheless found that the trial court erred in accepting the “age-based justification” as genuine, because the state’s proffered reason was also “clearly applicable” to a “similarly aged white male whom the State failed to challenge.” Id. at 605. See also Wallace v. State, 889 So.2d 928, 930 (Fla. 4th DCA 2004) (concluding trial court abused its discretion in accepting state’s explanation that African-American juror worked for a law firm, where state never challenged a white lawyer); Foster v. State, 732 So.2d 22, 24 (Fla. 4th DCA 1999) (finding state’s asserted reason of prior arrests of immediate family members for strikes of African-American jurors was not genuine, where challenge “was equally applicable to non-black jurors who were not challenged”); Brown v. State, 733 So.2d 1128 (Fla. 4th DCA 1999); Richardson v. State, 575 So.2d 294 (Fla. 4th DCA 1991); Mitchell v. State, 548 So.2d 823 (Fla. 1st DCA 1989).
In this case, we find the trial court’s finding of genuineness as to the state’s proffered reason for its strike of juror 22 to be clearly erroneous. Juror 2 had a brother who had been arrested for drugs, and her father had been arrested for an unknown offense. Juror 9 had a stepbrother who had been arrested for drugs. Juror 22 had a brother who had also been arrested for drugs, and his sister and father had been arrested for unknown offenses. Therefore, we find that jurors 2, 9, and 22 were similarly situated such that the state’s explanation for striking juror 22, an African-American, was equally applicable to white jurors 2 and 9.
In finding the state’s proffered reason for its challenge to juror 22 to be genuine, the trial court did not distinguish between juror 22 and jurors 2 and 9. The trial court focused on the facts that the state had previously stricken non-African-American jurors, and that two African-American jurors remained on the jury panel. The trial court determined the genuineness of the strike based solely on these grounds. This was error.[1] In Wallace, this court rejected “the state’s argument that the prosecutor’s use of a peremptory challenge was not pretextual in light of the fact that the prosecution had already accepted ... a black juror[ ] to sit on the panel.” 889 So.2d at 930. Relying on Abshire v. State, 642 So.2d 542, 544 (Fla.1994), this court found:
[T]he Florida Supreme Court specifically rejected the notion that all members of a protected class have to be struck in order for reversible error to occur. In [Abshire ], the supreme court stated that the fact women were seated on the jury is “of no moment,” because neither number alone nor the fact that a member of a minority has been seated is dispositive.
Wallace, 889 So.2d at 930-31; see also State v. Slappy, 522 So.2d 18, 24 (Fla.1988) *1280 (affirming grant of new trial “even though the final jury panel apparently contained one black”), receded from on other grounds by Melbourne, 679 So.2d at 765. Further, “[wjhether the state struck whites as well as blacks is irrelevant under the Batson[2] analysis. The question is whether, in the case of any individual juror, the reason for the strike was purposeful discrimination.” Bellamy v. Crosby, 31 So.3d 895, 900 (Fla. 1st DCA 2010).
For these reasons, we reverse appellant’s convictions and sentences and remand for a new trial. In light of our decision, we decline to address whether the trial court erred in denying appellant’s motion for judgment of acquittal on the armed trespass count.

Reversed and remanded.

FORST, J., and KLINGENSMITH, JJ., concur.

. Although the state also stated that juror 22 was "very quiet," we are unable to affirm the finding of genuineness based on this proffered reason. Assuming, without deciding, that the state was in fact asserting juror 22's quietness as an explanation for the strike, the trial court did not consider the genuineness of that explanation, as required by step 3 of Melbourne. See generally Hayes, 94 So.3d at 461 (stating that in determining whether explanation for the strike "is a pretext ‘given all the circumstances surrounding the strike,’ " that "the focus of this inquiry” is "the genuineness of the explanation”) (citation omitted).

. Batson v. Kentucky, 476 U.S. 79, 96-98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (setting forth procedure for determining whether purposeful discrimination is shown in the use of peremptory challenges).